UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
:
LADON BRUSTER, :
: CASE NO. 15-CV-2653
       Plaintiff, :
:
  vs. : OPINION & ORDER
: [Resolving Doc. 14]
UBER TECHNOLOGIES INC., et al., :
:
       Defendants. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      Plaintiff Ladon Bruster brings Ohio wage and labor law claims against Defendants Uber Technologies Inc. and its subsidiary, Rasier, LLC (collectively, "Uber").[1] Defendants move to dismiss this case and compel arbitration under the terms of the parties' June 2014 Technology Services Agreement (the "June 2014 Agreement").[2] For the following reasons, this Court **GRANTS** Defendants' motion to dismiss and compel arbitration.

### I. Background

      On July 30, 2014, Plaintiff Bruster activated his Uber account and began work as an Uber driver.[3] In order to sign up as an Uber driver, Plaintiff had to accept Uber's June 21, 2014, Agreement. The Agreement appeared on Plaintiff's phone through Defendants' Uber App. Plaintiff received as much time as he wished to review the Agreement before deciding whether to electronically accept or reject the Agreement.

---

[1] Doc. 12.
[2] Doc. 14. Plaintiff opposes. Doc. 17. Defendants reply. Doc. 18.
[3] Defendants characterize Uber as ". . . a technology company that offers a smartphone application connecting riders looking for transportation to independent transportation providers, such as Plaintiff, looking for riders . . . . Uber offers the Uber App as a tool to facilitate transportation services, and it licenses the use of the Uber App to independent transportation providers." Doc. 14-1 at 3 (internal citations omitted).

Case No. 15-cv-2653
Gwin, J.

On July 31, 2014, Plaintiff accepted the June 2014 Agreement. The Agreement contained the prominent class action waiver, arbitration and delegation provisions.[4]

---

[4] In part, the Agreement provided:

**IMPORTANT: PLEASE NOTE THAT TO USE THE SERVICE, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW. PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION. BY VIRTUE OF YOUR ELECTRONIC EXECUTION OF THIS AGREEMENT, YOU WILL BE ACKNOWLEDGING THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT (INCLUDING THE ARBITRATION PROVISION) AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION. IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE ARBITRATION PROVISION BELOW.**
. . .

**Arbitration Provision**

    <u>Important Note Regarding this Arbitration provision</u>:

. . .

    • Unless the law requires otherwise, as determined by the Arbitrator based upon the circumstances presented, you will be required to split the cost of any arbitration with the Company.
    • IMPORTANT: This arbitration provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis pursuant to the terms of the Agreement unless you choose to opt out of the arbitration provision. This provision will preclude you from bringing any class, collective, or representative action against the Company or Uber. It also precludes you from participating in or recovering relief under any current or future class, collective, or representative action brought against the Company or Uber by someone else.

. . .

**WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION. IT IS YOUR DECISION TO MAKE, AND YOU SHOULD NOT RELY SOLELY UPON THE INFORMATION PROVIDED IN THIS AGREEMENT AS IT IS NOT INTENDED TO CONTAIN A COMPLETE EXPLANATION OF THE CONSEQUENCES OF ABRITRATION** [sic]**. YOU SHOULD TAKE REASONABLE STEPS TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH OTHERS — INCLUDING BUT NOT LIMITED TO AN ATTORNEY — REGARDING THE CONSEQUENCES OF YOUR DECISION, JUST AS YOU WOULD WHEN MAKING ANY OTHER IMPORTANT BUSINESS OR LIFE DECISION.**

    i.    <u>How This Arbitration Provision Applies</u>.

This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving commerce. This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement Terminates . . . .

**Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration**

Case No. 15-cv-2653
Gwin, J.

Although the Agreement had given the Plaintiff the ability to opt out of the arbitration provision, Plaintiff Bruster did not opt out of the June 2014 Agreement's arbitration provision within 30 days of acceptance.

On November 27, 2015, Defendants deactivated Plaintiff's Uber account because of "continued unsatisfactory customer experiences."[5] In this lawsuit, the Plaintiff complains of Uber's treatment during the period before Uber's November 27, 2015, account termination.

After Uber ended Plaintiff's Uber account, on December 11, 2015, Uber rolled out a revised Agreement to its drivers. Despite Uber having deactivated Plaintiff's account, Plaintiff "accepted" the December 11, 2015 Agreement by tapping the "YES, I AGREE" button on

---

**on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**

Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.

Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship. This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law . . . and all other similar federal and state statutory and common law claims.

. . .

      **viii.**    **Your Right To Opt Out Of Arbitration.**

**Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by you, electronic mail to optout@uber.com, stating your name and intent to opt out of the Arbitration Provision or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (e.g. UPS, Federal Express, etc.), or by hand delivery . . . .**

**Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision. You have the right to consult with counsel of your choice concerning this Arbitration Provision. You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.**
Doc. 14-3 at 9, 19–20, 23 (capitalization and emphasis in original, font and size changes omitted).

[5] Doc. 14-1 at 6.

Case No. 15-cv-2653
Gwin, J.

Plaintiff's phone.[6] On December 16, 2015, Plaintiff sent a purported opt-out notice to Defendants.

On December 21, 2015, Plaintiff Bruster filed this lawsuit. On March 25, 2016, Defendants moved to dismiss the case and compel arbitration. Defendants say that the June 2014 Agreement's delegation provision requires an arbitrator—not this Court—to determine the enforceability of the arbitration provision. Uber also says that the June 2014 Agreement gave the arbitrator, but not this Court, authority to address the merits of Plaintiff's claims. Defendants also say that the arbitration provision is itself valid and therefore requires arbitration of Plaintiff's claims.

With his opposition, Plaintiff says that he opted out of the June 2014 arbitration and delegation provisions by accepting the December 11, 2015 Agreement and sending an opt-out notice. Plaintiff also says that the June 2014 Agreement arbitration provisions are unconscionable and therefore unenforceable.

## II. Legal Standard

The Federal Arbitration Act, 9 U.S.C. § 1 et seq., ("the FAA") governs arbitration and delegation disputes. Section 4 authorizes a district court to compel parties to arbitrate if the district court finds that the parties entered a valid and enforceable arbitration agreement that covers the dispute.[7]

Section 2 of the FAA says that arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

---

[6] Doc. 14-3 at 7–8.
[7] *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)) ("When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at issue.").

-4-

Case No. 15-cv-2653
Gwin, J.

District courts consider challenges to the validity of an arbitration provision independently from the rest of an agreement.[8]

District "[c]ourts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration."[9]

Parties may delegate gateway issues of arbitrability to the arbitrator.[10] A discrete agreement to submit gateway arbitrability questions to the arbitrator is treated as "an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce[.]"[11] However, the presumption in favor of arbitration does not apply to delegation clauses. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."[12]

The FAA preempts state arbitration laws.[13] However, state contract law applies to determine the validity of the arbitration provision.[14]

District courts sitting in diversity apply the choice of law rules of the forum state.[15] "Absent an effective choice of law provision, Ohio courts apply the law of the state with the most significant relationship to the contract."[16]

### III. Discussion

**Plaintiff is Bound by the June 2014 Agreement**

---

[8] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967).
[9] *Stout*, 228 F.3d at 714.
[10] *Rent-A-Ctr., W, Inc. v. Jackson*, 561 U.S. 63, 69–70 (2010) (holding that delegation of authority to arbitrator to determine the enforceability and scope of arbitration agreement was valid under FAA).
[11] *Id.* at 70.
[12] *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).
[13] *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996).
[14] *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).
[15] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).
[16] *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 623 (6th Cir. 2008) (citing Restatement (Second) of Conflict of Laws § 188; *Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206, 220 (Ohio 2001)).

Case No. 15-cv-2653
Gwin, J.

The parties entered into a valid agreement when Plaintiff accepted the June 2014 agreement and started driving using the Uber app. Plaintiff could have opted out of the arbitration and delegation provisions by August 30, 2014, but did not. Therefore, the arbitration and delegation provisions applied from July 31, 2014—the day Plaintiff accepted the June 2014 Agreement—onward.[17]

Plaintiff's purported "acceptance" of the December 2015 agreement and purported "opt-out" of the December 2015 arbitration and delegation provisions are not valid. First, the December 2015 Agreement is not an enforceable agreement between the parties.[18] Uber deactivated Plaintiff's account in November 2015, several weeks before Plaintiff attempted to accept the December 2015 agreement. With its deactivation of Plaintiff's account, Uber withdrew from an ongoing contractual relation with Plaintiff.

The appearance of the December 2015 Agreement on Plaintiff's phone is insufficient to show that Defendants were making an offer to Plaintiff. Defendants had already deactivated Plaintiff's account, and there is no indication that Defendants intended the December 2015 agreement to reach Plaintiff. Absent an offer, there is no contract formation.

Furthermore, there was no consideration to support Plaintiff's purported acceptance. Because Defendants deactivated Plaintiff's account, Plaintiff could not connect with potential passengers through the Uber App at the time Plaintiff tried to accept the December 2015 Agreement and could not get any business through Uber.

---

[17] "This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement Terminates . . . ." Doc. 14-3 at 20.

[18] *Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1195 (S.D. Ohio 2013) (under Ohio law "[e]ssential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." (quoting *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002))).

Case No. 15-cv-2653
Gwin, J.

Because there was no new agreement to replace the June 2014 Agreement, the arbitration and delegation provisions of the June 2014 Agreement apply.

**The June 2014 Agreement's Delegation Provision is Valid and Enforceable**

The parties agreed to submit arbitrability questions to an arbitrator, not to the Court. The June 2014 Agreement says:

> . . . this Arbitration Provision is intended to apply to the resolution of disputes
>
> . . .
>
> arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.[19]

Plaintiff argues that the June 2014 arbitration and delegation provisions are unconscionable and unenforceable. This argument loses.

Ohio law applies to determining the validity of this contract. The June 2014 arbitration and delegation provisions do not have a choice of law clause. Ohio has "the most significant relationship to the contract": Plaintiff resided in Ohio, Plaintiff accepted the June 2014 agreement in Ohio, and Plaintiff provided services in Ohio to passengers using the Uber App.

Under Ohio law, a contract provision is unconscionable only if it is both procedurally and substantively unconscionable.[20]

The delegation provision is not procedurally unconscionable.

> Procedural unconscionability exists where the circumstances surrounding a party to the contract were such that no voluntary meeting of the minds was possible. Ohio courts look to factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the

---

[19] Doc. 14-3 at 20 (emphasis omitted).
[20] *Scovill v. WSYX/ABC*, 425 F.3d 1012, 1017 (6th Cir. 2005).

-7-

Case No. 15-cv-2653
Gwin, J.

terms were explained to the weaker party, and whether alterations in the printed terms were possible."[21]

Uber may have had a stronger bargaining position relative to Plaintiff. Defendants drafted the June 2014 Agreement.

However, the terms of the June 2014 Agreement allow Plaintiff to opt out of the delegation provision without any consequences or changes in the parties' employment relationship.[22] Plaintiff had 30 days from accepting the agreement to decide whether to opt out of arbitration altogether.[23] The opt-out process was fairly painless: Plaintiff only needed to email his name and his intent to opt out to Uber.[24] In other words, the delegation provision was conscionable because "alterations in the printed terms [of the arbitration provisions] were possible,"[25] with no other change to Plaintiff's working relationship with Uber.

Because Plaintiff does not show procedural unconscionability in the formation of the June 2014 delegation provision, the provision is valid and enforceable under Ohio law. Since Plaintiff needs to show both procedural and substantive unconscionability to make the provision unenforceable, this Court does not address the substantive unconscionability of the June 2014 delegation provision.

Because the June 2014 delegation provision is valid, this Court does not decide whether the arbitration provision is enforceable. The June 2014 delegation provision delegates issues of arbitrability to the arbitrator, not the Court. This Court does not address the merits of Plaintiff's arbitrability claims.[26]

---

[21] *Id.* (internal citations and quotation marks omitted).
[22] "You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision." Doc. 14-3 at 23 (emphasis omitted).
[23] *Id.*
[24] *Id.*
[25] *Scovill*, 425 F.3d at 1017.
[26] *See AT & T Techs.*, Inc., 475 U.S. at 649–50.

-8-

Case No. 15-cv-2653
Gwin, J.

## IV. Conclusion

For the above reasons, this Court **GRANTS** Defendants' motion to dismiss and compel arbitration. This Court **ORDERS** that the parties submit issues of arbitrability to the arbitrator under the terms of the June 2014 Agreement. If the arbitrator finds Plaintiff's claims to be arbitrable, then the parties must submit their claims to arbitration under the terms of the June 2014 agreement.

IT IS SO ORDERED.

Dated: May 23, 2016                           *s/         James S. Gwin*
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE